THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO. 5:08-CV-520-FL

| | |
|---|---|
| RANDOLPH SHOULARS, ) | |
| ) | |
| Plaintiff/Claimant, ) | |
| ) | |
| v. ) | **MEMORANDUM AND** |
| ) | **RECOMMENDATION** |
| MICHAEL J. ASTRUE, Commissioner ) | |
| of Social Security, ) | |
| ) | |
| Defendant. ) | |

This matter is before the Court on the parties' cross motions for judgment on the pleadings pursuant to FED. R. CIV. P. 12(c). Claimant Randolph Shoulars ("Claimant") filed this action pursuant to 42 U.S.C. § 1383(c)(3) seeking judicial review of the denial of his application for Supplemental Security Income ("SSI") payments. The time for filing responsive briefs has expired and, accordingly, the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, this Court recommends granting Claimant's Motion for Judgment on the Pleadings, denying Defendant's Motion for Judgment on the Pleadings, reversing the decision of the Commissioner and remanding this matter for a calculation of benefits.

## STATEMENT OF THE CASE

Claimant filed an application for SSI payments on 9 May 2005, alleging disability beginning 1 June 2004. (R. 17, 75-80). His claim was denied initially and upon reconsideration. (R. 27-28, 46, 65). A hearing before the Administrative Law Judge ("ALJ") was held on 5 December 2007, at which Claimant was represented by counsel and a medical expert ("ME") and a vocational expert ("VE") appeared and testified. (R. 453-87). On 24 March 2008, the ALJ

issued a decision denying Claimant's request for benefits. (R. 14-26). On 21 August 2008, the Appeals Council denied Claimant's request for review. (R. 5-8). Claimant then filed a complaint in this Court seeking review of the now final administrative decision.

## STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner...as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

## DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," *i.e.*, currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 474 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.* If the ALJ finds that the claimant is disabled and there is "medical evidence of [his] drug addiction or alcoholism," then the ALJ should proceed under 20 C.F.R. § 416.935 to determine whether the claimant "would still [be found] disabled if [he] stopped using drugs or alcohol." 20 C.F.R. § 416.935 (2008); *see Sanders v. Apfel*, No. 3:00CV296-H, 2001 WL 114360, at *6 (W.D.N.C. Jan. 26, 2001). The claimant bears the burden "of proving that his drug abuse and/or alcoholism are not contributing factors material to the determination of his disability." *Id.* (citing *Brown v. Apfel*, 192 F.3d 492, 498 (5th Cir. 1999)).

In this case, Claimant alleges the following errors by the ALJ: (1) improper analysis of whether Claimant's impairments meet or equal one of the Listings; (2) improper assessment of Claimant's residual functional capacity ("RFC"); and (3) failure to apply the correct rule under

3

the Medical-Vocational Guidelines ("the Grids"). *See* Pl.'s Mem. in Supp. of Pl.'s Mot. for J. on the Pleadings at 1-2, 5, 7. ("Pl.'s Mem.").

## FACTUAL HISTORY

### I. ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant was no longer engaged in substantial gainful employment. (R. 19). Next, the ALJ determined Claimant had the following severe impairments: (1) cirrhosis of the liver; (2) substance abuse; (3) hepatitis; (4) gastroesophageal reflux disease ("GERD"); and (5) esophageal candidosis. *Id.* The ALJ determined further that even if Claimant stopped the substance abuse, he "would continue to have a severe impairment or combination of impairments." (R. 22). However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 20, 22).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, based on all impairments, finding Claimant lacked the ability to perform sedentary work. (R. 20). However, the ALJ found that Claimant, absent substance abuse, had the ability to perform light work[1]

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. § 416.967(b).

4

involving no reading and writing that was simple, routine and repetitive and gave him access to a restroom. (R. 22). In making this assessment, the ALJ found Claimant's statements about his limitations not fully credible. (R. 22-24).

At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of his past relevant work as a bricklayer, regardless of his substance abuse. (R. 24). Nonetheless, at step five, upon considering Claimant's age, education, work experience and RFC, the ALJ determined that Claimant, absent substance abuse, is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 25).

## II. Claimant's Testimony at the Administrative Hearing

At the time of Claimant's administrative hearing, Claimant was 52 years old and unemployed. (R. 456, 458). Claimant attained a sixth-grade education and testified that he is unable to read and write.[2] (R. 457). Claimant was last employed in 1992 as a brick mason. (R. 458). Claimant's driver's license was revoked in 1989 due to driving under the influence of alcohol. (R. 456).

Claimant testified that he is unable to work due to high blood pressure and swallowing difficulties, both of which are controlled by medication he cannot afford, cirrhosis of the liver, blocked arteries, stomach ulcers and hepatitis. (R. 460-61, 467). As a result of these impairments, Claimant experiences "black outs," fatigue, sleeping problems, weakness in his upper extremities, breathing difficulties, and chest, back, abdominal, liver and stomach pains. (R.

---

[2] The ALJ confirmed that in completing a disability report, Claimant noted he was capable of reading and understanding English but, with the exception of his name, could not write. (R. 97, 457).

5

461-62, 464, 468). Claimant testified further to experiencing kidney problems and in particular, a need to use the restroom frequently. (R. 470). Claimant explained he does not have a treating physician because doctors "won't see [him]" and is seen by emergency room physicians only. (R. 459). Claimant does not take any medications because he cannot afford the cost. *Id.*

Regarding his limitations, Claimant is able to stand for 10-15 minutes and sit for 5-10 minutes. (R. 465-66, 468). Claimant experiences lightheadedness if he stands too quickly and he tires easily. (R. 465-66). Claimant spends the majority of his day sitting in a recliner. (R. 468). Claimant testified to leaving his home only once per week due to breathing difficulties. (R. 466).

Claimant testified that he stopped using cocaine in 2006; however, he continues drinking alcohol. (R. 463). He testified further that doctors advised him to stop drinking alcohol. *Id.* However, Claimant explained he cannot stop drinking because it encourages his appetite and without alcohol, he will not eat. *Id.*

### III. Medical Expert's Testimony at the Administrative Hearing

Nathan Strahl, M.D. and Ph.D., a board-certified psychiatrist, testified as an ME at the administrative hearing. (R. 139, 17-30). The ME explained that Claimant's medical issues are "in may ways secondarily stemming" from his "alcohol abuse." (R. 471). Indeed, the ME testified that Claimant's gastrointestinal ("GI") tract had "taken a formal assault" from his long-time alcohol abuse, noting reflux disease, pancreas and kidney problems and "liver issues with hepatitis." (R. 471). The ME explained that even if Claimant stopped drinking, he already had "permanent sequela from his alcohol abuse," including hepatitis, gastritis, reflux disease and fatigue. (R. 478-79). The ME noted also Claimant's history of cocaine abuse. (R. 472).

6

Case 5:08-cv-00520-FL  Document 25  Filed 07/14/09  Page 6 of 17

The ME testified that Claimant's IQ score of 65 is "consistent with mild mental retardation." However, due to the lack of school records, the ME could not determine whether Claimant's IQ predated age 18 or whether it was the result of alcohol abuse. *Id.* The ME commented further that the IQ test administrator noted Claimant smelled of alcohol and was shaking at the time. (R. 481). The ME opined that Claimant does not meet Listing 12.05C for mental retardation because "without the alcohol his functionality would be significantly higher." (R. 474).

The ME testified that assuming Claimant stopped abusing alcohol, he could perform light work alternating sitting and standing every two hours that involved simple, routine repetitive tasks and did not require reading or writing. (R. 478, 482). However, the ME stated that the prognosis for Claimant to cease drinking was poor. *Id.*

### IV. Vocational Expert's Testimony at the Administrative Hearing

Kimberly Engler, a rehabilitation counselor, testified as a VE at the administrative hearing. (R. 146, 484-87). The ALJ posed the following hypothetical:

> [A]ssume an individual the age, education and work background as [Claimant's] and . . . assume that individual [is] [l]imited to light work, the individual would further be limited to simple, routine, repetitive tasks. [C]laimant should avoid jobs that require reading or writing and finally should have access to a restroom. With such limitations can you find any jobs that hypothetical individual could perform?

(R. 484). The VE responded the individual could perform the following positions and provided DOT classification citations along with the number of jobs available in the local and national economies: (1) cleaner, housekeeping - DOT 323.687-014, 3,000 locally, 250,000 nationally; (2) inserting machine tender - DOT 208.685-018, 1,000 locally, 50,000 nationally; and (3) small products assembler II - DOT 739.687-030, 1,000 locally, 50,000 nationally. *Id.* The VE

7

testified further that these positions would not require more than two hours of walking and standing at a time without a break. (R. 485). Finally, the VE explained that if the hypothetical individual needed unscheduled, frequent breaks due to fatigue or bladder problems, the above-listed positions would not be available. (R. 458-86).

## DISCUSSION

I.  **The ALJ's finding that Claimant's impairment did not meet or equal Listing 12.05 is supported by substantial evidence.**

Claimant argues that the ALJ erred by finding that her impairment does not meet or equal Listing 12.05, the listing for mental retardation. *See* Pl.'s Mem. at 5. This Court disagrees

Claimant bears the burden of demonstrating that his impairments meet or equal a listed impairment. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981). Listing 12.05 sets forth a two-part inquiry for determining mental retardation. *Norris v. Astrue*, No. 7:07-CV-184-FL, 2008 WL 4911794, at *3 (E.D.N.C. Nov. 14, 2008); *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05. First, a claimant must satisfy the diagnostic description of mental retardation, which requires a showing of "(1) significantly subaverage general intellectual functioning[3] (2) with deficits in adaptive functioning[4] (3) initially manifested

---

[3] The phrase "significantly subaverage general intellectual functioning" is found also in the definition of mental retardation found in the Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV"), which the DSM-IV defines as "an IQ of about 70 or below." AM. PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 39 (4th ed. 1994).

[4] Listing 12.05 does not define "adaptive functioning." Regulations promulgated by the SSA provide that "[t]he definition of [mental retardation] . . . in [the] listings is consistent with, if not identical to, the definitions of [mental retardation] used by the leading professional organizations." Technical Revisions to Medical Criteria for Determinations of Disability, 67 Fed. Reg. 20018-01, at 20022 (April 24, 2002). Given "the SSA declined to adopt any one of [these] specific definitions, . . . the introductory paragraph of Listing 12.05 can be met if the individual is found to have, *inter alia*, deficits in adaptive functioning as defined by any of the four professional organizations." *Durden v. Astrue*, 586 F. Supp. 2d 828, 834 (S.D. Tex. 2008).

8

during the developmental period; i.e.... before age 22." *Id.* (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05). Upon making this showing, the claimant must then meet the required severity level of this disorder, which is accomplished by satisfying any one of four categories labeled (A)-(D) under § 12.05. *Id.* Claimant contends he satisfies the mental retardation listing under category C ("Listing 12.05C"), which requires (1) a valid verbal, performance or full scale IQ of 60 through 70; and (2) another impairment, physical or mental, that imposes an additional and significant work-related limitation of function.[5] *Id.* at § 12.05C.

In this case, Claimant's argument centers around the ALJ's reliance on the lack of school records documenting IQ results prior to age 22.[6] *See* Pl.'s Mem. at 6. On 6 October 2004, a Wechsler Adult Intelligence Scale - Third Edition ("WAIS-III") test administered by state agency examining consultant Gary Bachara, Ph.D., revealed that Claimant has IQ scores in the required range for Listing 12.05C, with a verbal IQ of 71, a performance IQ of 63 and a full scale IQ of 65. (R. 173). "In cases where more than one IQ is customarily derived from the test administered, e.g., where verbal, performance, and full scale IQs are provided in the Wechsler

---

[5] The "work-related limitation of function" requirement is satisfied when the claimant is determined to have a severe impairment at step two of the evaluation process. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00A (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)); *see also Flowers v. U.S. Dep't Health & Human Servs.*, 904 F.2d 211, 214 (4th Cir. 1990) ("In this circuit, we follow the rule that if a claimant cannot return to his past relevant work, he has established a work-related limitation of function which meets the requirements of § [12.05C]"); *accord Luckey v. Dept. of Health & Human Servs.*, 890 F.2d 666, 669 (4th Cir. 1989) (holding that claimant satisfies the second prong of 12.05C if claimant has an additional severe impairment or cannot perform his past relevant work).

[6] Defendant's argument focuses primarily on whether Claimant exhibited deficits in adaptive functioning prior to age 22. *See* Def.'s Mem. in Supp. of Def.'s Mot. for J. on the Pleadings at 16-17 ("Def.'s Mem."). However, there is no evidence that the ALJ's decision was dependent on that issue. Indeed, the Court can find no documentation in the ALJ's decision indicating that the ALJ discussed that issue. Rather, the ALJ's decision focuses only on Claimant's IQ and whether Claimant's current score reflected Claimant's IQ during the developmental period. *See* (R. 24).

9

series, we use the lowest of these in conjunction with 12.05." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00D(6)(c); *see also Rainey v. Heckler*, 770 F.2d 408, 410 (4th Cir. 1985). Claimant's lowest score on the WAIS-III was a performance IQ of 63, which falls within the sixty to sixty-nine range required under § 12.05C. (R. 173).

While this score was recorded after the developmental period, a person's IQ is presumed to remain stable over time "in the absence of any evidence of a change in a claimant's intellectual functioning." *Luckey*, 890 F.2d at 669. However, in this case, such evidence possibly exists as a result of Claimant's continued substance abuse, which may have resulted in a decrease in Claimant's IQ after age 22. (R. 24, 172, 180, 184, 473-74). During the October 2004 examination, Dr. Bachara indicated Claimant smelled of alcohol and that his hands were shaking. (R. 24, 172). Based on this information and other records documenting evidence of substance abuse, the ME testified that having school records

> would . . . document whether that IQ has been something that he was born with and predates age 18 . . . or [whether] it's something that is consequential of the longstanding alcohol that he's had. [A]lcohol is a brain poison over long-term use and can certainly cause some mental retardation and slower scores, slower activity level.

(R. 472-73). The ME testified further that alcohol "certainly does and certainly can affect [Claimant's] performance." (R. 24, 473). The ME concluded that Claimant does not meet the requirements of Listing 12.05C because "without the alcohol, [Claimant's] functionality would be significantly higher." (R. 474).

The ALJ inquired as to whether school records documenting an IQ below 70 *may* change the ME's opinion. (R. 474-75). The ME responded in the affirmative, explaining school records "might label [Claimant] as a functionally mild mental (sic) retarded individual." (R. 475).

10

Accordingly, the ALJ deferred his decision over 90 days from the date of the hearing in an effort to accommodate the Claimant in submitting school records to support his claim.[7] (R. 17). However, Claimant failed to submit said records. Nevertheless, Claimant contends the ALJ "ignored the fact that school record (sic) or IQ testing from childhood are not a requirement to meet [Listing 12.05C]." Pl.'s Mem. at 6 (citing *Branham v. Heckler*, 775 F.2d 1271 (4th Cir. 1985). However, as explained above, an individual's IQ is not assumed to remain relatively constant throughout his life if evidence exists of a change in a person's intelligence functioning. *Luckey*, 890 F.2d at 668. Here, such evidence possibly exists as a result of Claimant's continued substance abuse. For this reason, the ALJ's reliance on school records was proper and by failing to submit said records, Claimant failed to meet his burden of demonstrating that his impairments meet or equal a listed impairment. Accordingly, Claimant's argument as to this issue is without merit.

## II.   The ALJ properly assessed Claimant's RFC.

Claimant contends the ALJ's determination that Claimant could perform light work absent the use of alcohol was error. *See* Pl.'s Mem. at 8. This Court disagrees.

---

[7] The ALJ explained that

> the record was initially held open post-hearing for two weeks to allow the claimant time to submit additional medical and school records to support his claim. Upon the request of the claimant's attorney on December 13, 2007, the undersigned agreed to continue to hold the record open for submission for an additional 30 days. The most recent medical evidence submission of the claimant was made on February 19, 2008, at which time the claimant's attorney indicated that she was waiting on school records.

(R. 17).

11

Case 5:08-cv-00520-FL   Document 25   Filed 07/14/09   Page 11 of 17

The RFC is an administrative assessment of "an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis" despite impairments and related symptoms. Soc. Sec. Rul. ("S.S.R.") 96-8p, 1996 WL 374184, at *1; *see also* 20 C.F.R. § 416.945(a)(1). In determining the RFC, the ALJ considers an individual's ability to meet the physical, mental, sensory and other requirements of work. 20 C.F.R. § 416.945(a)(4). It is based upon all relevant evidence and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. § 416.945(a)(3); *see also* S.S.R. 96-8p, 1996 WL 374184, at *5. Finally, the RFC assessment "must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." S.S.R. 96-8p, 1996 WL 374184, at *7.

The ALJ considered Claimant's subjective complaints and Claimant's medical history. (R. 20, 23). The ALJ noted that the medical record contains no evidence of a mental impairment absent substance abuse. (R. 23-24). The ALJ noted further the lack of evidence of disabling symptoms of Claimant's epigastric impairments absent substance abuse. (R. 24). Indeed, the Claimant denied the symptoms of nausea, vomiting, abdominal pain, coughing, shortness of breath, weakness or numbness to his primary care physician when he was abstaining from alcohol. (R. 23, 244-45[8]). During a recent hospitalization, Claimant "reported that he noticed a 'significant improvement in his pain management' when he was detoxed from alcohol and cocaine . . . .'" (R. 23, 444).

---

[8] A duplicative record exists on pages 334 and 335 of the administrative transcript.

The ALJ acknowledged the ME's testimony that Claimant's "GI tract had taken assault because of his long-standing alcohol abuse." (R. 23). However, Claimant's physicians have imposed no physical restrictions and the ME testified that if Claimant ceased drinking, he could perform light work involving simple, routine, repetitive tasks - limitations adopted by the ALJ. (R. 24, 475-76). Indeed, a state agency examining physician found Claimant capable of performing such tasks, even when substance abused was considered. (R. 24, 241). Finally, the ALJ noted despite being told repeatedly by his physicians to stop using cocaine and alcohol, Claimant "recently told hospital physicians during an admission [for detoxification] that he did not have a problem with substance abuse . . . ." (R. 24, 444, 447).

Based on the foregoing, this Court finds that the ALJ's RFC determination is supported by substantial evidence. The ALJ analyzed all of the relevant evidence, sufficiently explained his findings and his rationale in crediting the evidence and applied the correct legal standards in evaluating Claimant's RFC. Accordingly, Claimant's argument as to this issue is without merit.

## III. The ALJ failed to apply the correct rule under the Grids.

Claimant contends that the ALJ misapplied the Grids in making the determination that Claimant is not disabled. *See* Pl.'s Mem. at 8. This Court agrees.

Once a claimant successfully demonstrates that he cannot perform his past relevant work, the burden shifts to the ALJ to show that the claimant, based on his age, education, work experience and RFC, can perform other substantial gainful work. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *see also Pass*, 65 F.3d at 1203. The ALJ may carry this burden through the use of the Grids if a claimant has no nonexertional impairments that prevent him from performing the full range of work at a given exertional level. *Coffman*, 829 F.2d at 518;

*Gory v. Schweiker*, 712 F.2d 929, 930-31 (4th Cir. 1983). In such a case, the Grids allow the ALJ to take "administrative notice" of the availability of jobs in the national economy that can be performed by individuals based on combinations of the following factors: the claimant's age, education, job experience, and functional capacity to work. *See* 42 U.S.C. § 1382c(a)(3)(B). Nonetheless, "where an individual has . . . impairments resulting in both strength limitations and nonexertional limitations, [as in the case at bar,] the [Grid] rules . . . *are considered in determining first whether a finding of disabled may be possible based on the strength limitations alone* and, if not, the [Grid rules] . . . provide a framework for consideration . . . ." 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(e)(2) (emphasis added). In other words, the Grid rules "may be used, *notwithstanding the presence of non-exertional limitations*, if exertional limitations alone would result in a finding of disability." *Wirth v. Barnhart*, 318 F. Supp. 2d 726, 735 (E.D. Wis. 2004) (emphasis added).

In the instant case, the ALJ, noting that Claimant lacked the RFC to perform the full range of light work, relied on VE testimony in finding Claimant "not disabled," using Rule 202.11 as a framework only. (R. 25). Rule 202.11 directs a finding of disability where the individual is closely approaching advanced age (i.e., fifty to fifty-four years old), has previous skilled or unskilled work experience which is not transferable, is *literate* and able to communicate in English and has the RFC to perform light work. 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table 2, § 202.11. Claimant contends, however, that based solely on the strength limitation of light work as found by the ALJ, a finding of disabled is directed by Rule 202.09. *See* Pl.'s Mem. at 7; *see also Wirth*, 318 F. Supp. 2d at 735. In particular, Claimant maintains

14

that his age,[9] coupled with the fact that the ALJ found Claimant illiterate, had no past relevant work[10] and was limited to light work, rendered him disabled as a matter of law. *See* Pl.'s Mem. at 7-8 (citing 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table 2, § 202.09 (directing a finding of disability for claimants with the foregoing characteristics)). In further support of his position, Claimant notes:

> Where the same factors in paragraph (c) [i.e., prior unskilled work, no transferable skills or no prior work experience] of this section regarding education and work experience are present, but where age, though not advanced, is a factor which significantly limits vocational adaptability (i.e., closely approaching advanced age, 50-54) and *an individual's vocational scope is further significantly limited by illiteracy* . . . a finding of disabled is warranted.

*See* Pl.'s Mem. at 8 (citing 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 202.00(d) (emphasis added)).

Defendant contends that Claimant does not qualify under Rule 202.09 because Claimant is not illiterate. *See* Def.'s Mem. at 19 (citing 20 C.F.R. § 416.964(b)(1) (defining illiteracy as "the inability to read or write" and explaining "[g]enerally, an illiterate person has had little or not formal education")).[11] In support of this argument, Defendant points to an eight-page disability function report containing handwritten responses identifying Claimant as the person who completed the report. *See id.*; *see also* (R. 111-18). Defendant relies on also Claimant's

---

[9] Upon turning the age of 50 years old, Claimant became a person "closely approaching advanced age." 20 C.F.R. § 416.963(d).

[10] The ALJ found that Claimant "has *very remote* past relevant work as a bricklayer." (R. 21) (emphasis added). However, "past relevant work" is defined as "work that [the claimant] has done within the last 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." 20 C.F.R. § 416.960(b)(1). "The 15-year guide is intended to insure *that remote work experience is not currently applied.*" 20 C.F.R. § 416.965(a) (emphasis added).

[11] The court acknowledges Claimant's completion of 6th grade, which the regulations classify as "marginal education." 20 C.F.R. § 416.964(b)(2). However, this education category is not discussed by Plaintiff, Defendant or the ALJ.

15

correction of his hearing testimony regarding his inability to read.[12] However, in summarizing Claimant's testimony and in evaluating the credibility thereof, the ALJ did not discuss Claimant's statements concerning reading and writing, see (R. 20-21, 23), and this Court must "judge the propriety of the [ALJ's determination] solely by the grounds invoked by the [ALJ]." *SEC v. Chenery Corp.* 332 U.S. 194, 196 (1947) (noting a court may not substitute its own reasoning for that of the agency). In fact, the ALJ, apparently based on the ME's testimony that Claimant was "functionally illiterate" and "would be unable to work in a job that required reading," (R. 23-24, 473), found Claimant incapable of performing jobs that involved reading and writing. Accordingly, Defendant's position is foreclosed by the ME's testimony and the ALJ's RFC finding.

Given that Claimant's RFC, age, work experience and education match a grid category, automatic application of the Grids is appropriate. *See Gossett v. Bowen*, 862 F.2d 802, 806 (10th Cir. 1988) ("Automatic application of the grids is appropriate only when a claimant's RFC, age, work experience, and education precisely match a grid category.") (citing *Heckler v. Campbell*, 461 U.S. 458, 462 n.5 (1983)). Accordingly, the Court finds that the ALJ erred in not directing a finding of disability based on Rule 202.09.

---

[12] It is in fact unclear whether Claimant corrected his initial testimony that he was unable to read. After Claimant testified to an inability to read, the ALJ questioned Claimant's response based on a second disability report wherein Claimant indicated he could read. *See* Def.'s Mem. at 19; *see also* (R. 97, 457). Before allowing Claimant to respond, Claimant's counsel asked, "You did mean when you said you could read that you could read - -" to which Claimant responded, "Yeah," his attorney responded, "Okay," and the ALJ responded, "Well, we're - - okay." (R. 457-58). Based on this exchange between Claimant, the ALJ and Claimant's counsel, Defendant asserts that Claimant changed his testimony to acknowledge that he could read.

16

## CONCLUSION

For the reasons stated herein, this Court RECOMMENDS Claimant's Motion for Judgment on the Pleadings be GRANTED, Defendant's Motion for Judgment on the Pleadings be DENIED, and the final decision of the Commissioner be REVERSED and REMANDED to the Commissioner for a determination of benefits.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have ten (10) days upon receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

This, the 14th day of July, 2009

*/s/ Robert B. Jones, Jr.*
Robert B. Jones, Jr.
United States Magistrate Judge